IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| ALMA GUZMAN-ESTRADA | § |
| | § |
| Plaintiff | § |
| | § |
| v. | § No. SA-12-CA-09 |
| | § |
| SOUTHSIDE INDEPENDENT | § |
| SCHOOL DISTRICT | § |
| | § |
| Defendant | § |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Alma Guzman-Estrada, a former employee of the Defendant, Southside Independent School District, filed this civil action claiming that she had been discharged from her employment in retaliation for having complained about gender discrimination. The School District denies retaliation, and insists that the Plaintiff was discharged for cause. A non-jury trial was held on December 5, 2012. The Court's findings of fact and conclusions of law are incorporated in this Opinion.

The Southside Independent School District, a political subdivision of the state of Texas, is an independent school district located in the southern part of Bexar County, Texas. It is a relatively small (5,220 students), and relatively poor, school district. The District is governed by a Board of Trustees elected by the voters within the school district. The Board selects a superintendent to act as the chief administrative officer. In addition to supervising principals and teachers, the superintendent

is required to oversee several other areas which are essential to the operation of the school district, including building maintenance, custodial services, food service, and transportation. During the time period relevant to this suit, the superintendent relied on an Executive Director of Operations to assist him in the supervision and oversight of the non-teaching functions of the school district.

Plaintiff Alma Guzman-Estrada was first employed by the School District in 1981 in the position of Secretary of Federal Programs. A few years later, she transferred to the maintenance department, again in a secretarial position.  In 2006, the Board of Trustees decided not to fill the vacant position of Maintenance Director. Instead, the Board decided to create two new positions: Maintenance Manager and Custodial Manager.[1]  On October 19, 2006, Plaintiff Guzman-Estrada was selected to serve as Maintenance Manager, and another employee, Cynthia Martinez, was appointed to serve as Custodial Manager (Plaintiff's Ex. 9, p. 3).  The salary of the Maintenance Manager was fixed at $42,000 a year, which represented a significant raise for the Plaintiff.  In the new position, she was, and continued to be, an at-will employee.

In 2007, the District appointed a new superintendent, Dr. Juan Jasso.  He instituted what he described as a "collaborative"

---

[1] The District employs about 25 maintenance and custodial employees to serve its eight campuses.

2

approach to the operation of the School District. He announced to all employees that his theme would be "exemplary behavior begets exemplary performance." According to Dr. Jasso, it was an essential part of the collaborative approach to reduce or eliminate conflict among "team members," which would interfere with the mission of the School District.

Shortly after his arrival, Dr. Jasso detected the existence of a strained relationship between Plaintiff Guzman-Estrada and her supervisor, the Director of Operations, James Carillo. In part because of this conflict, Dr. Jasso informed Carillo that he would not be rehired when the new school year began in 2008. Accordingly, in 2008, Frank Bayardo was appointed to the position of Executive Director of Operations, and he thereby became the Plaintiff's supervisor. According to Bayardo, upon assuming that position, he was strictly charged to adopt a "transformation" approach, with the goal being to "make better workers out of our people, not vice versa." To further these goals, Bayardo considered it important to reduce conflicts between supervisors and rank-and-file employees which would have the effect of separating the "leadership team" from other employees. As Maintenance Manager, the Plaintiff was a member of the leadership team, and Bayardo expected her to perform her supervisory functions in accordance with this approach.

The first sign of trouble revealed by the evidence was in February 2009. Apparently, the position of Custodial Manager had

3

been vacated, and Ms. Guzman-Estrada was temporarily supervising custodial employees also. A severe conflict arose between her and Enrique Moncada, the lead custodian at the high school (Defendant's Ex. 2, 3, and 5). Either at this time or at a later time, the Plaintiff admits that she insulted Moncada by calling him a "wetback."[2] As a result of this incident, it appears that Bayardo agreed to assume personal supervision of Moncada (Defendant Ex. 5).

At the beginning of the 2009-2010 school year, the District hired a new supervisory employee, Randy Young, to serve in the position of Facility and Construction Coordinator. Although it seemed clearly outside her portfolio, Plaintiff Guzman-Estrada sent a message to Dr. Jasso on September 22, 2009, complaining not only about the appointment of Young, but the selection process which led to his appointment (Defendant's Ex. 11).[3]

One of the maintenance employees under the supervision of the Plaintiff was Efrain Herrera. In October 2009, Ms. Guzman-Estrada told Herrera that their boss, Mr. Bayardo, wanted to know why he had so much overtime (Defendant's Ex. 14). Herrera was apparently quite upset, and attempted to reach both the Plaintiff and Bayardo

---

[2] The word actually used by the Plaintiff was "mojado." As will be seen later, the Plaintiff had a tendency to frame her insults in the Spanish language.

[3] Shortly before this event, Ms. Guzman-Estrada had announced her intention to retire at the end of that school year and to run for election to the Board of Trustees. She makes reference to that announcement in her memo to Dr. Jasso.

4

repeatedly by telephone. When he finally got through to Bayardo, he was told that Bayardo had never questioned his overtime. The next time Herrera encountered Ms. Guzman-Estrada, she criticized him for telling Bayardo about their conversation.

In the first few days of October, Guzman-Estrada and Bayardo exchanged e-mail messages on the subject of her salary for the school year 2009-2010 (Defendant's Ex. 15). Although Guzman-Estrada had received an increase in salary from the prior school year, she was contending that the salary she was receiving was less than the maximum salary for her position reflected in the School District budget. Bayardo responded to her question, but also took the opportunity to express concern about her attitude. Bayardo's e-mail to the Plaintiff dated October 3, 2009, contained the following language:

> You are part of our leadership team and must follow our guidelines of exemplary behavior. I really find it very difficult to allow this type of reaction to continue. It appears when things don't go your way, you mention the media, lawyers, grievances, and the fact you [are] retiring and running for the board when you get out. This must stop immediately!

Defendant's Ex. 15, p. 2. On October 5, 2009, Plaintiff responded that she found Bayardo's e-mail "very offensive and very threatening."

Only a few days later, on October 8, 2009, the Plaintiff complained that Bayardo was assigning maintenance employees to special projects without going through her (Defendant's Ex. 18).

She also complained again about the new director (Randy Young) and about her salary.

On November 18, 2009, the Plaintiff sent a rather bizarre e-mail message to the superintendent, Dr. Jasso (Defendant's Ex. 20). The thrust of the message was that she had not been invited to attend a Thanksgiving luncheon with the superintendent, Bayardo, and others. She described it as a "grave and serious concern."

Joe Nino was a painter in the maintenance department, supervised by Plaintiff Guzman-Estrada. On December 29, 2009, Guzman-Estrada telephoned Nino at his home to ask whether it was true that Bayardo was engaging in an extramarital love affair with another management employee of the School District (Defendant's Ex. 21). Nino's response was that he did not wish to discuss the subject over the telephone. Nevertheless, Ms. Guzman-Estrada called Nino again the next day. In this telephone conversation, she wanted to know whether Nino had reported their previous conversation to Bayardo (Defendant's Ex. 22). In that conversation, Ms. Guzman-Estrada had some additional unflattering things to say about Randy Young (Defendant's Ex. 23). According to Nino, the Plaintiff stated that Young did not know his job; did not know how to spell; did not know anything about computers; and did not have any balls.[4] Nino also recalled at this time that a month prior to

---

[4] The Plaintiff used a Spanish word for balls which could have been either "huevos" or "cojones."

6

this conversation, the Plaintiff had told him to "watch it," because Young had a son who was a painter, and that he might be trying to replace Nino with his son (Defendant's Ex. 23).

Nino reported these conversations to Bayardo, who described this as the "last straw that broke the camel's back." In early January 2010, Bayardo recommended to the superintendent that because of her divisive and destructive behavior, the Plaintiff's employment should be terminated. Dr. Jasso responded by placing the Plaintiff on administrative leave while Bayardo's complaints were investigated and written statements could be obtained from those employees who had reported many of these incidents to him.

In November 2009, the Plaintiff had filed a formal grievance under the District's standard grievance procedure, in which she contended that even though her title was Maintenance Manager, she was entitled to receive the same salary as a Director (Plaintiff's Ex. 3). Her grievance was heard in December 2009 by the Director of Human Resources for the School District, but his decision was adverse to the Plaintiff. She appealed to the Superintendent who heard her appeal on February 23, 2010 (Defendant's Ex. 27). So far as the record shows, this hearing was the first occasion on which the Plaintiff charged the District with gender discrimination. In response, Dr. Jasso stated "you have not provided any evidence to support this claim." Dr. Jasso insisted that the District was an equal opportunity employer which did not discriminate on the basis

of gender (Defendant's Ex. 27, p. 2).[5]

On April 22, 2010, counsel for the School District addressed a letter to the attorney representing Ms. Guzman-Estrada offering to furnish to the Plaintiff all the information gathered in the School District's investigation (Plaintiff's Ex. 14). Neither Ms. Guzman-Estrada nor her counsel replied to this letter. Accordingly, on May 13, 2010, counsel for the School District wrote again to Plaintiff's attorney, Ms. Olga Brown (Plaintiff's Ex. 15). This time, counsel forwarded to the Plaintiff's representative copies of the witness statements obtained through the investigation and requested the Plaintiff and/or her counsel to respond. That request was also ignored.

On June 30, 2010, the Superintendent, Dr. Jasso, issued a formal notice of termination (Defendant's Ex. 28). He stated three reasons for deciding to terminate the Plaintiff's employment:

1. Because her leadership influence had been compromised and was no longer effective.

2. Because she engaged in divisive behavior having a negative effect on relationships and on her leadership and influence.

3. Because in critical situations, she did not exhibit a "unifying demeanor."

The decision to terminate the Plaintiff's employment was upheld by the Board of Trustees. The Plaintiff filed a Charge of

---

[5] The Plaintiff claimed gender discrimination a second time at a grievance hearing on April 8, 2010 (Defendant's Ex. 28, p. 1).

8

Discrimination with the Equal Employment Opportunity Commission, which issued a Right to Sue letter. The instant suit was filed in state court on November 21, 2011. The School District filed a notice of removal, removing it to this Court on the basis of federal question jurisdiction.

The elements of a claim of retaliation are (1) that the employee engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. **Hernandez v. Yellow Transportation, Inc.**, 670 F.3d 644, 657 (5th Cir. 2012). With respect to the third element, the "causal link," the Court of Appeals in this circuit has consistently applied a "but for" test, meaning that the employee has the burden of proving by a preponderance of the evidence that but for having engaged in a protected activity, he or she would not have been discharged. **Pineda v. United Parcel Service, Inc.**, 360 F.3d 483, 487 (5th Cir. 2004).

With respect to the first element, we assume that lodging a complaint of gender discrimination in the course of an employer's internal grievance procedure qualifies as a protected activity. As to the second element, termination of employment is an adverse employment action. The real issue in this case is whether the Plaintiff has sustained her burden of proving the existence of the causal link between her engaging in protected activity and her

discharge.

Frank Bayardo recommended Plaintiff's termination in early January 2010. On January 8, 2010, the Plaintiff was placed on administrative leave while Bayardo's charges were being investigated. The Plaintiff did not assert a specific claim of gender discrimination until February 23, 2010, at a time when the investigation was well under way. Evidence obtained in the course of that investigation substantially corroborated Bayardo's claim that the Plaintiff had become a disruptive and divisive force within the leadership team of the School District. Several specific examples of this conduct are cited in the termination notice issued by Dr. Jasso (Defendant's Ex. 28). Having considered all the evidence admitted in this case, including testimony and exhibits, and applying the Fifth Circuit test, the Court finds that the School District's stated reasons for terminating the Plaintiff's employment were legitimate, non-discriminatory and not pretextual, and that the Plaintiff has failed to sustain her burden of proving by a preponderance of the evidence that her discharge was in retaliation for having engaged in protected activity.

It is not the role of the Court to second guess the employment decisions of any employer, public or private. It is indeed unfortunate that Ms. Guzman-Estrada's many years of service to the School District ended in her discharge for cause. However, it is undisputed that she was an at-will employee, and that the Defendant

was authorized to terminate her employment at any time, so long as the reason for termination was not one prohibited by law. **Garcia v. Reeves County**, 32 F.3d 200 (5th Cir. 1994); **Irby v. Sullivan**, 737 F.2d 1418 (5th Cir. 1984). The evidence in this case fails to establish that the Plaintiff was discharged in retaliation for a complaint of gender discrimination, and the Defendant is entitled to judgment in its favor.

IT IS THEREFORE ORDERED that Judgment be, and it is hereby, ENTERED in favor of the Defendant, and that the Plaintiff take nothing by her suit.

SIGNED AND ENTERED this 18th day of December, 2012.

HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE